## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DIGITAL SIN, INC. | ) | |
| 21345 Lassen Street | ) | |
| Chatsworth, CA 91311 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-CV-8170-CM |
| | ) | |
| DOES 1 – 245 | ) | OPPOSITION TO MOTION TO |
| | ) | DISMISS OR SEVER OF DOE 149 |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF JOHN DOE NUMBER 149's (IP 69.86.91.57) MOTION TO DISMISS, TO ISSUE A PROTECTIVE ORDER, AND MOTION TO PROCEED ANONYMOUSLY** [Document 15]

Plaintiff Digital Sin, Inc., filed a Complaint against John Does residing in New York who traded the same, identical file of Plaintiff's copyrighted work without authorization through a file-swapping network ("Peer-to-Peer" or "P2P" network). All John Does are New York residents.

On or about February 17, 2012, Doe Number 149 filed a "Motion to Dismiss, in the Alternative, to Issue a Protective Order and Motion for Leave to Proceed Anonymously."

**Doe Number 149's Motion is word-for-word identical to many other Motions to Dismiss or Quash, based on samples on websites that oppose copyright enforcement. In fact, a word-for-word identical Motion was filed a few days ago in *Third Degree Films, Inc. v. Does 1 – 217*, 11-cv-7564-JGK (Document 22). It is attached as *Exhibit 1* to this Opposition. Doe Number 149 did not even insert the Case Caption or correct the typos in the sample that he copied from the internet, starting with "Protecive Order" in the headline.**

Furthermore, it appears that Doe Number 149 lives in New York City. *See Exhibits 2 and 3*, IP locator searches, both showing that Doe Number 149 likely resides in New York. Plaintiff understands that such IP locator searches after the fact are not absolutely reliable.

Doe Number 149's Motion fails to address this specific Complaint. Doe Number 149 requests and argues:

"*I. The Court Should Allow John Doe to Proceed Anonymously. As an initial matter, Doe respectfully requests that he be permitted to proceed anonymously in filing this motion.*" Plaintiff has not objection to Doe Number 149 being anonymous during the initial stages, as the specific information for this John Doe has not yet been received from his Internet Service Provider (ISP) and thus the facts for this particular John Doe have not been reviewed. Plaintiff also understands the John Does' desire for privacy in such cases.

"*II. Plaintiff has Improperly Joined the Defendants Based on Separate and Different Alleged Acts.*" Doe Number 149 used a template to file this Motion, and thus failed to respond to the specific allegations in the Complaint. Plaintiff meets the *Digiprotect* standard, as explained below.

"*III. Defendant Doe Moves this Court to Issue a Protective Order.*" Doe Number 149 does not explain for what exactly he is seeking a protective order. Plaintiff does not object to Doe Number 149 filing this Motion (and possibly others) anonymously until he is named as a defendant in this case. Doe Number 149's Motion should be denied.

**<u>Doe Number 149 Lacks Standing to Challenge the Subpoena</u>**

A party to a lawsuit lacks standing to object to a subpoena served on a non-party, unless the party objects to the subpoena on the grounds of privilege, proprietary interest or privacy

interest in the subpoenaed matter. *See Fed.R.Civ.P. 45*(c)(3)(B). See also *Robertson v. Cartinhour*; 2010 U.S. District LEXIS 16058 (D. Md. 2010) (Day, MJ) (*unreported*).

Internet subscribers do not have a proprietary interest or an expectation of privacy in their subscriber information because they have already conveyed such information to their Internet Service Providers (ISPs). *See Guest v. Leis,* 255 F. 3d 325 (6th Cir. 2001); *United States v. Simons,* 206 F.3d 392 (4th Cir., 2000).

The only information sought through the Subpoena at issue is the Doe defendants' contact information. This information has already been shared by the Doe Defendants with their respective ISPs.

Further, the Doe defendants exposed their IP addresses to the public by sharing the Motion Picture at issue. The torrent software exposes the IP address of the infringer, as explained in the Complaint and the *Declaration of Jon Nicolini*.

Therefore, Doe Number 149 lacks standing.

**"I. The Court Should Allow John Doe to Proceed Anonymously. As an initial matter, Doe respectfully requests that he be permitted to proceed anonymously in filing this motion."**

Plaintiff has no objection to Doe Number 149 being anonymous during the initial stages, as the specific information for this John Doe has not yet been received from his Internet Service Provider (ISP) and thus the facts for this particular John Doe have not been reviewed. Plaintiff also understands the John Does' desire for privacy in such cases.

**"II. Plaintiff has Improperly Joined the Defendants Based on Separate and Different Alleged Acts."**

Doe Number 149 used a template to file this Motion, and thus failed to respond to the specific allegations in the Complaint. Plaintiff meets the *Digiprotect* standard.

In two recent cases, the Southern District of New York has reviewed such issues in copyright infringement cases. *See Digiprotect USA Corp. v. John/Jane Does 1-266*, 10 Civ. 8759 (TPG) (April 13, 2011) ("Digiprotect I") & *Digiprotect USA Corp. v. John/Jane Does 1-240* (PAC) (September 26, 2011) ("Digiprotect II"). In those cases, the Plaintiff lumped Doe defendants from different parts of the U.S. together. In *Digiprotect I*, Plaintiff alleged that its injury had occurred in New York and because of the nature of peer-to-peer file sharing, New York residents were likely involved. Only 20 to 25 of the 266 IP addresses were located in New York. In *Digiprotect II*, only 10 of the 240 IP addresses were located in New York, and Plaintiff Digiprotect argued that there is jurisdiction if any one Doe resides in New York. *See Digiprotect II*, slip op. at 5.

Unlike the *Digiprotect* cases, all Doe defendants in the present case reside in New York, and jurisdiction is thus proper. *N.Y. C.P.L.R. Section 301 (general jurisdiction requires that the defendant reside, do business, or be served with process while in New York)*. Plaintiff has made a *prima facie* showing of jurisdiction over the Doe defendants. *See attached Declaration of Jon Nicolini, as well as Exhibit D to the Complaint*.

Pursuant to Fed.R.Civ.P. 20(a)(2), the Defendants have been properly joined, as set forth in detail below and in the supporting *Declaration of Jon Nicolini*, because Plaintiff alleges that all Defendants have intentionally traded (uploaded and downloaded) *the exact same file of the copyrighted works in related transactions through torrent software*.

Unlike the *Digiprotect* cases, where the Doe defendants had allegedly committed the same type of offense by file sharing and distributing *the same movie*, the Doe defendants in this case shared and distributed not just the same movie, but *exactly the same file as identified by the hash mark*. Unlike the list of Doe defendants in the *Digiprotect* cases, the case at bar included a

list of Doe Defendants showing the identical hash mark for the shared file. *Compare List of Doe*

*Defendants in the Digiprotect cases to the List of Doe Defendants (Exhibit A) in the present case.*

The Doe defendants were identified through the use of forensic software. Plaintiff,

through its agents and representatives, has taken steps to confirm that all Defendants have in fact

engaged in a series of related transactions or occurrences. All Defendants identified in Exhibit A

(i) *have traded exactly the same file* of the copyrighted work as shown by the identical hash

mark; (ii) have traded (simultaneously uploaded and downloaded) the file as is the nature of

torrent software; and (iii) the alleged events occurred within a limited period of time. *See*

*attached Declaration of Jon Nicolini:*

5.      Therefore, the original seeder and each of the members of the swarm (i.e., each
peer) must have separately installed on their respective computers special software that allows
peer-to-peer sharing of files by way of the Internet.  The most popular type of peer-to-peer file
sharing program utilizes the BitTorrent protocol.  …. In any event, *the seeder and each member*
*of the swarm (i.e., peer) must intentionally install a BitTorrent client* (i.e., software application)
onto his or her computer before that computer can be used to join a BitTorrent file sharing
network.

6.      P2P networks distribute infringing copies of motion pictures (and works in other
forms such as music and books) with file sharing software such as BitTorrent as follows:  *The*
*process begins with one user accessing the Internet through an Internet Service Provider ("ISP")*
*and intentionally making a digital file of the work available on the Internet to the public from his*
*or her computer.*  This first file is often referred to as the first "seed."

7.      …. That is, each peer (i.e. member of a swarm) in a P2P network has acted and
acts in cooperation with the other peers by agreeing to provide, and actually providing, an
infringing reproduction of at least a substantial portion of a copyrighted work in anticipation of
the other peers doing likewise with respect to that work and/or other works.  *Joining a P2P*
*network is an intentional act, requiring the selection by a peer of multiple links to do so.*

Declaration of Jon Nicolini, paras. 5-7 (*italics added*).

In a "swarm" copyright infringement case decided by Judge Howell, *Voltage Pictures,*

*LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787 (D.D.C. May 12, 2011), the court

distinguishes the cases that ordered severance, and notes that BitTorrent file sharing uses a

"swarm" of infringers. In that case, the court denied motions to quash by several defendants.

Judge Howell explained, at 2011 U.S. Dist. LEXIS 50787, at [*35]-[*39], as follows

(emphasis added):

Some courts in other jurisdictions have granted motions by putative defendants for severance in analogous copyright infringement cases against unknown users of peer-to-peer file-sharing programs for failure to meet the 'same transaction or occurrence test' in Rule 20(a)(2). Those courts have been confronted with bare allegations that putative defendants used the same peer-to-peer network to infringe copyrighted works and found those allegations were insufficient for joinder. See, e.g., IO Grp., Inc. v. Does 1-19, No. 10-03851, 2010 WL 5071605, at *8-12 (N.D. Cal. Dec. 7, 2010); Arista Records, LLC v. Does 1-11, No. 07-cv-2828, 2008 WL 4823160, at *6 (N.D. Ohio Nov. 3, 2008) ('merely alleging that the Doe Defendants all used the same ISP and file-sharing network to conduct copyright infringement without asserting that they acted in concert was not enough to satisfy the same series of transactions requirement under the Federal Rules.'); LaFace Records, LLC v. Does 1-38, No. 5:07-cv-298, 2008 WL 544992, at *3 (E.D. N.C. Feb. 27, 2008) (severing putative defendants in file-sharing case not involving BitTorrent technology, noting that 'other courts have commonly held that where there is no assertion that multiple defendants have acted in concert, joinder is improper.'); Interscope Records v. Does 1-25, No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (adopting Mag. J. Report and Recommendation at Interscope Records v. Does 1-25, No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004)). That is not the case here.

The plaintiff has provided detailed allegations about how the BitTorrent technology differs from other peer-to-peer file-sharing programs and necessarily engages many users simultaneously or sequentially to operate. See Columbia Pictures Indus. v. Fung, No. 06-5578, 2009 U.S. Dist. LEXIS 122661, at *7 (C.D. Cal. Dec. 21, 2009) (*BitTorrent 'is unique from that of previous [P2P] systems such as Napster and Grokster. Rather than downloading a file from an individual user, [BitTorrent users download] from a number of host computers that possess the file simultaneously. . . . The BitTorrent client application simultaneously downloads the pieces of the content file from as many users as are available at the time of the request, and then reassembles the content file on the requesting computer when the download is complete. Once a user downloads a given content file, he also becomes a source for future requests and downloads.')*. Specifically, BitTorrent creates a 'swarm' in which 'each additional user becomes a part of the network from where the file can be downloaded . . . [U]nlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded the file that together comprises the whole.' Second Am. Compl., ¶ 3.

At least one court has not been persuaded that allegations of copyright infringement by users of BitTorrent satisfy the requirement of Rule 20. See, e.g., Lightspeed v. Does 1-1000, No. 10-cv-5604, 2011 U.S. Dist. LEXIS 35392, at *4-7 (N.D. Ill. Mar. 31, 2011) (finding that Doe defendants using BitTorrent technology were misjoined on the basis that the putative defendants were not involved in the 'same transaction, occurrence, or series of transactions or occurrence' under FED. R. CIV. P. 20(a)(2)(A)); Millennium TGA Inc. v. Does 1-800, No. 10-cv-5603, 2011 U.S. Dist. LEXIS 35406, at *3-5 (N.D. Ill. Mar. 31, 2011) (same). In those cases, the court did

not discuss the precise nature of the BitTorrent technology, which enables users to contribute to each other's infringing activity of the same work as part of a 'swarm.' In any event, by contrast to the instant claim of infringement of a single copyrighted work by the putative defendants, the plaintiffs in Lightspeed and Millennium TGA Inc. alleged infringement of multiple works, a factor that may undermine the requisite showing of concerted activity to support joinder.

Here, as in *Voltage Pictures*, Plaintiff alleges that the Doe Defendants have acted in cooperation with each other (i.e., in concert), and Plaintiff's expert, Nicolini, explained. See *Declaration of Jon Nicolini*, paras. 6 and 22. Furthermore, in this case the John Does are even more linked than the John Does in *Voltage Pictures*, because in this case all John Does traded the exact same file.

Because Doe Number 149 used a template, the cases he cites are completely inapposite. For example:  *Laface Records, LLC v. Does 1-38*, 07-cv-298, 2008 U.S.Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008). This case involved multiple record companies sueing multiple John Doe Defendants for illegally posting copies of multiple songs on the internet.  The only connection among the John Does was the use of the same ISP and the same P2P filesharing network.

*Boy Racer, Inc. v. Does 1-60*, Case No. 3:11-cv-01738 (N.D. Cal. August 19, 2011), involved the illegal download of a same Motion Picture through the same file-sharing mechanism. Plaintiff in that case failed to allege that the Defendants traded the exact same file or acted in concert. Exhibit A to the Complaint in that case fails to identify the file or any other relation among the Defendants. Also, it appears that Plaintiff lumped together Doe Defendants from different parts of the U.S. simply because they were somehow connected to illegal file sharing in California. In comparison, the present case involves trading of the same exact file, as identified by the Hash Mark and listed in Exhibit A to the Complaint. All Doe Defendants are located in Maryland.

7

*BMG Music v. Does 1-203*, No. Civ.A. 04-650 (E.D. Pa. Apr. 2, 2004), involved 203 Does from different parts of the U.S. who each had posted between 5 and 10 different songs on the internet. Personal jurisdiction was based on the fact that such illegally copied works can be downloaded in every jurisdiction of the U.S., and based on the fact that their common internet service provider Comcast is located there. In comparison, the present case involves all Maryland residents who traded the exact same, single file as identified by the Hash Mark (not a variety of copyrighted works).

The plaintiffs in each of those cases failed to allege that the Doe defendants acted in concert with each other.  Here, all the Doe defendants are related to each other, in particular because they each traded *the same identical file* of the motion picture, as identified by the hash mark.

### "*III. Defendant Doe Moves this Court to Issue a Protective Order*."

Doe Number 149 does not explain for what exactly he is seeking a protective order. Plaintiff does not object to Doe Number 149 filing this Motion (and possibly others) anonymously until he is named as a defendant in this case.

Doe Number 149 should not receive the benefit of any other protective order.

### *There is no privacy interest in the contact information sought by the subpoena.*

As is relevant here, Rule 45(c)(3)(iii) provides that a court may quash a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(iii). Pursuant to Rule 45(d)(2), when subpoenaed information is withheld based on a claim of privilege, the claim of privilege must "describe the nature of the withheld [information] in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *Fed.R.Civ.P. 45(d)(2).*

8

The burden of persuasion on a motion for protective order or to quash is borne by the movant. *See Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F.Supp.2d 1, 16-17 (D.D.C. 2010) (motion for protective order); *Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C.Cir. 1998) (motion to quash).

Courts have held that Internet subscribers do not have an expectation of privacy in their subscriber information as they already have conveyed such information to their ISPs. *See, e.g., Guest v. Leis*, 255 F.3d 325, 335-36 (6th Cir.2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties."); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest in the account information given to the ISP in order to establish an email account); *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D.Kan.2000) (defendant's Fourth Amendment rights were not violated when an ISP turned over his subscriber information, as there is no expectation of privacy in information provided to third parties).

**<u>Conclusion</u>**

Based on the above-stated reasons, Plaintiff respectfully requests this Court to deny the Motion to Dismiss submitted by Doe Number 149.   A proposed order will be submitted separately.

Respectfully submitted this 24th day of February, 2012.

By:   /s/ Mike Meier

Mike Meier (NY ID MM9295)
The Copyright Law Group, PLLC
4000 Legato Road, Suite 1100
Fairfax, VA 22033
Phone: (888) 407-6770
Fax: (703) 546-4990

Email:
mike.meier.esq@copyrightdefenselawyer.com

ATTORNEY FOR PLAINTIFF

**EXHIBITS**

(1) Doe Number 149's Motion is word-for-word identical to many other Motions to Quash based on samples provided on websites that oppose copyright enforcement. In fact, an identical Motion was filed a few days ago in *Third Degree Films, Inc. v. Does 1 – 217*, 11-cv-7564-JGK (Document 22). It is attached as *Exhibit 1* to this Opposition.

(2) First IP Location Search, showing that Doe Number 149 is most likely located in New York City.

(3) Second IP Location Search, showing that Doe Number 149 is most likely located in New York City.

**CERTIFICATE OF SERVICE**

I hereby certify that on 6 January 2012, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. In addition, I will mail a copy to Doe 149 at:

John Doe
P.O. Box 1267
New York, NY 10156

By:    /s/ Mike Meier
        Mike Meier (NY ID MM9295)
        The Copyright Law Group, PLLC
        4000 Legato Road, Suite 1100
        Fairfax, VA 22033
        Phone: (888) 407-6770
        Fax: (703) 546-4990
        Email:
        mike.meier.esq@copyrightdefenselawyer.com

        ATTORNEY FOR PLAINTIFF